

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 7, 2024

**BY ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    <u>United States v. Whitehead</u>, S1 22 Cr. 692 (LGS)

Dear Judge Schofield:

      The Government respectfully submits this letter reply in support of its motions *in limine* (Dkt. 110 ("Gov. Mem.")) and in response to the defendant's opposition (Dkt. 115 ("Def. Opp.")). For the reasons set forth below and in the Government's memorandum of law, the Court should grant each of the Government's four motions and (1) permit the Government to offer evidence of the defendant's uncharged misrepresentations regarding his finances, including his use of doctored and fraudulent bank records, as direct evidence of the crimes charged, or, in the alternative, pursuant to Federal Rule of Evidence 404(b); (2) permit the Government to cross-examine the defendant regarding his prior fraud-related convictions and their underlying dishonest conduct should he elect to testify; (3) preclude the defendant from introducing his own out-of-court statements; and (4) preclude the defendant from attacking the credibility of a non-testifying victim.

**I.      Evidence of the Defendant's Pattern of Submitting Doctored and Fraudulent Bank Records Should Be Admitted as Direct Evidence or Under Rule 404(b)**

      Evidence that the defendant repeatedly submitted doctored Bank-1 statements and repeatedly lied about his financial assets in order to obtain money—in the same way he submitted doctored Bank-1 statements and lied about his financial assets as charged in Count Five—is highly probative and offered as direct evidence or under Rule 404(b) to prove the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident as to Count Five—and also as to the defendant's motive as to Counts One and Two. (Govt. Mem. § I (citing, *e.g.*, *United States v. Gonzalez*, 110 F.3d 936, 941-42 (2d Cir. 1997) (direct evidence), and *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (404(b) evidence))).

      The defendant's speculative and conclusory claims of unfair prejudice are outweighed by the exceedingly probative value of the defendant's repeated pattern of financial misrepresentations. Just because evidence is extremely compelling or damning does not mean it is unduly prejudicial. (Gov. Mem. at 16-17 (citing cases)). The defense claims that the evidence at issue may lead the jury to convict the defendant for uncharged crimes, or, in other words, that the jury will be confused as to the charges against the defendant. (Def. Opp. at 2). But if accepted,

the defendant's argument would bar *all* other act evidence in fraud (or other) cases because of the risk that the jury will convict the defendant for the wrong crime—which is certainly not the case, as courts routinely admit evidence of prior frauds under Rule 404(b). (*See* Gov. Mem. at 14-16 (citing, *e.g.*, *United States v. Watts*, No. S3 09 Cr. 62 (CM), 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) ("Evidence of a defendant's participation in other, similar fraud is routinely admissible pursuant to Rule 404(b).")))[1]  Withholding such highly probative evidence from the jury would be both unfair and misleading.  Excluding such evidence, for example, could lead the jury to believe that the defendant did not have the requisite intent, perhaps made a "mistake" in submitting the June 2018 Business Loan Application, or that someone other than the defendant committed the fraud.

The Government, moreover, has every confidence that the Court will properly instruct the jury as to the specific charges against him and as to the ways in which the jury may consider the defendant's uncharged misrepresentations—and that the jury will follow the Court's instructions. *See United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009) ("The law 'almost invariabl[y] assum[es]' that juror follow such limiting instructions." (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing cases))).  And while the defendant argues that there is a risk that the Court may need to give *too many* limiting instructions (*see* Def. Opp. at 2-3), he offers no support for the notion that the need to offer multiple limiting instructions would be problematic.  The law is to the contrary.  The Court's job is to effectively instruct the jury, and the Second Circuit has approved of the use of "numerous cautionary and limiting instructions," because such instructions "assist the jury in its understanding of the bearing of the evidence." *Consorti v. Armstrong World Indus., Inc.*, 64 F.3d 781, 787 (2d Cir. 1995).

The defendant's other claims are similarly unavailing.  Evidence is admissible under Rule 404(b) if it is advanced for a proper purpose, relevant to an issue in the case, and its probative value is not substantially outweighed by unfair prejudice.  *Scott*, 677 F.3d at 69.  It does not need to serve the exact same purposes as the other act evidence in *United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) (Def. Opp. at 2), although here, the evidence does provide background, completes the story of the crimes charged, and helps explain the evidence to the jury.  As to *modus operandi*, the evidence is "sufficiently idiosyncratic" to "permit a fair inference of a pattern's existence."  (*Id.* at 3-4).  But even if it were not, the evidence certainly establishes a highly probative pattern, and it is admissible under Rule 404(b) for several other proper purposes—each of which the defendant fails to address—such as motive, intent, identity, and absence of mistake.

---

[1] The Government is not seeking to offer in its case-in-chief evidence of every instance of fraud or attempted fraud committed by the defendant.  For example, the Government does not plan to offer evidence about the defendant's misrepresentations made in order to create fake "power of attorney" documents, the defendant's misrepresentations made in connection with his campaign for Brooklyn Borough President, or the defendant's misrepresentations made in connection with an application for Paycheck Protection Program funds.  Instead, the Government seeks to offer focused evidence of one kind of fraud committed by the defendant through evidence that is "inextricably linked" to Count Five that is also highly probative of the defendant's motive, opportunity, intent, knowledge, identity, absence of mistake, and lack of accident.  (*See* Gov. Mem. at 14-16).

**II.      The Government Should Be Permitted to Question Whitehead about his Prior Fraud If He Testifies**

Rule 609(b) permits the admission of a criminal conviction for purposes of impeachment even after ten years.  The defendant committed a significant fraud—in which he stole numerous identities, created numerous fake email accounts, and submitted fraudulent loan applications—and was released from prison slightly more than ten years ago.  On those facts, as the Government's motion explained, the Government must show that the conviction's probative value "substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). (Gov. Mem. at 23-26).  The Government has made that showing here.

To be clear, the Government does not seek to offer the defendant's prior fraud conviction (and its underlying conduct) as other act evidence under Rule 404(b).  The test under Rule 609(b), unlike Rule 404(b), is not whether the defendant's prior fraud conviction is similar to or probative of to the charged offenses, as the defendant mistakenly claims.  (Def. Opp. at 5 "[T]he fact that these offenses are so different limits their probative value")).  In fact, in this context, similarities between the frauds would count against, rather than for, admissibility. *See, e.g.*, *United States v. Brown*, 606 F. Supp. 2d 306, 314 (E.D.N.Y. 2009) ("[S]imilarity of past and present offenses weighs heavily *against* the use of prior criminal convictions for impeachment purposes."). Instead, the question under Rule 609(b) is whether the prior conviction is probative of the defendant's truthfulness.   And here, the defendant's fraud conviction undoubtedly is: courts routinely recognize that fraud convictions are particularly important impeachment evidence. *See, e.g.*, *United States v. Bumagin*, 136 F. Supp. 3d 361, 376 (E.D.N.Y. 2015) (noting that the "impeachment value of a fraud conviction is high," "because such a conviction bears on the accused's propensity to testify truthfully" (internal quotation marks, citations, and alterations omitted).

The result of the balancing required by Rule 609(b) is clear. The probative value of the conviction at issue does substantially outweigh its potential prejudicial effect. The dissimilarity of the prior and current crimes reduces the potential for unfair prejudice. Indeed, the defendant concedes that the differences between the defendant's prior fraud and the current charges "may lessen the prejudicial effect." (Def. Opp. at 5).  Where, as here, (1) the defendant's credibility is a "crucial issue" at trial; (2) the defendant committed an offense more than ten years ago that is particularly probative of credibility—like a "fraud conviction"; (3) the prior crime and pending charges are "not so similar as to invite improper inferences" of propensity; and (4) the "age of the prior conviction and the defendant's subsequent history" do not "suggest that he had abandoned his earlier ways," the admission of the prior conviction under Rule 609(b) is proper. *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981). Those factors may not often all align, so as to favor admission of convictions more than ten years old. But they do align here. Should the defendant testify, the Court should permit the Government to offer the defendant's prior fraud conviction and question him about the underlying conduct for impeachment purposes under Rule 609(b).

**III.     The Court Should Preclude the Defendant From Offering His Own Out-of-Court Statements**

The defendant has confirmed that he "does not intend at this time to offer any out of court statements made by" the defendant himself. (Def. Opp. at 6).  But he purports to "reserve the right

to offer any such statement should a basis for admission become evident at a later date." (*Id.*).  To the extent the Government's third motion *in limine* is not moot—*i.e.*, to the extent the defendant may later seek to offer his own out-of-court statements for their truth—the Court should grant the motion for the reasons set forth in the Government's moving brief. (Gov. Mem. at 27-30).

In responding to this motion, the defendant separately—and seemingly unrelatedly— mentions that the Government "may wish to offer statements" that were published in *The New Yorker*, and claims that such statements should not be admitted. (Def. Opp. at 6).  The Government may well introduce the defendant's own statements, which are non-hearsay.  *See* Fed. R. Evid. 801(d)(2)(A).  To the extent the defendant wishes to preclude any particular statements he made, on any basis, as reflected in *The New Yorker* article or otherwise, he should file a motion seeking that relief, so that the Court can have the benefit of full briefing.

## IV.    The Court Should Preclude Irrelevant Attacks on Victim-2's Credibility

The defendant argues that the Government's motion to preclude irrelevant attacks on a non-testifying witness is "premature," because the Government might offer Victim-2's statements pursuant to a hearsay exception, or as party admissions, such that Rule 806 would permit impeachment.  (Def. Opp. at 6-7).  The Government reiterates: Victim-2's statements to the defendant, in recorded conversations, will not be offered for the truth of the matters asserted by Victim-2.  They will lend context to the defendant's statements, and some may be offered as adoptive admissions by the defendant.  But they will not be offered for their truth; there will not be a need to invoke hearsay exceptions to admit them; and they will not be offered as statements Victim-2 made while acting as an agent or co-conspirator of the defendant, *see* Fed. R. Evid 801(d)(2)(C), (D), and (E).  As a result, Rule 806 will not apply.  The Government's motion to preclude impeachment of Victim-2 should therefore be granted.[2]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: s/
Jessica Greenwood / Jane Kim / Derek Wikstrom
Assistant United States Attorneys
Tel.: (212) 637-1090 / 2038 / 1085

---

[2] The defense asserts his "right to call" Victim-2 "as a hostile witness."  (Def. Opp. at 7).  It is true that if the defendant has a legitimate basis to call Victim-2, and if Victim-2 in fact testifies rather than asserting his Fifth Amendment right despite facing pending criminal charges, then *any party* could permissibly impeach Victim-2.  Fed. R. Evid. 607.  But it is also the case that the defendant cannot "permissibly" call "a hostile witness for the sole purpose of impeaching him."  *United States v. Shandorf*, 20 F. App'x 50, 53 (2d Cir. 2001) (citing *United States v. Zackson*, 12 F.3d 1178, 1184-85 (2d Cir. 1993)).  Given how unlikely it is that Victim-2 will testify, the Court should grant the motion, and can revisit its ruling if Victim-2 takes the stand.